IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CV-3-D

ROC F. SANSOTTA, et al., )
)
          Plaintiffs, )
)
v. ) **ORDER**
)
TOWN OF NAGS HEAD, )
)
          Defendant. )

     Plaintiffs own oceanfront cottages in Nags Head, North Carolina, and contend that the Town of Nags Head violated state and federal law when it enacted and sought to enforce an ordinance applicable to the cottages. The Town of Nags Head asks this court to dismiss plaintiffs' case for lack of subject-matter jurisdiction. In support, the Town of Nags Head contends that plaintiffs' claims are not ripe. Alternatively, the Town of Nags Head argues that if the case is ripe, recent events have made the case moot. As explained below, the court grants the motion to dismiss.

I.

     The facts are set forth in greater detail in <u>Sansotta v. Town of Nags Head</u> (<u>Sansotta I</u>), No. 2:10-CV-29-D, 2012 WL 1059838, at *1–2 (E.D.N.C. Mar. 28, 2012) (unpublished). Essentially, on November 12, 2009, a storm struck the Town of Nags Head (defendant or "Town") and damaged six oceanfront cottages located on Seagull Drive, Nags Head, North Carolina ("Cottages"). Compl. [D.E. 1-4] ¶¶ 32–33, 45–46. Ralph and Gloria Tomita, Carole Shackelford, James Bregman, Linda Atsus, George Rusin, and the estate of Joseph Klaus (collectively, "plaintiffs") own the Cottages. See <u>id.</u> ¶¶ 4–13. Roc F. Sansotta manages the Cottages on plaintiffs' behalf, and has partial

ownership interests in five of the Cottages. Id. ¶¶ 13, 16–17. On November 30, 2009, the Town issued a declaration of nuisance ("Nuisance Declaration") to plaintiffs. See id. ¶ 48. The Town instructed plaintiffs to demolish the Cottages within eighteen days or face daily $100 fines. See id. ¶ 49.

On July 7, 2010, the Town adopted Ordinance No. 10-07-021 ("Ordinance 10-07-021"), which amended various sections of the Town's Code of Ordinances. Id. ¶ 61; see Nags Head, N.C., Ordinance No. 10-07-021 (July 7, 2010).[1] The ordinance contains four amendments to the Town's Code of Ordinances. The first amendment defines the term "public trust beach area." Nags Head, N.C., Ordinance No. 10-07-021, art. III, pt. I; see Nags Head, N.C., Code § 48-7. The second classifies as "prohibited" any structure that exists in the public trust beach area, and states that a Nuisance Declaration issued pursuant to Ordinance 16-31(6)(c) is sufficient to "prohibit" a structure. Nags Head, N.C., Ordinance No. 10-07-021, art. III, pt. II; see Nags Head, N.C., Code § 48-87(c). In addition, any construction or maintenance work (but not demolition work) on prohibited structures now requires building permits. Nags Head, N.C., Ordinance No. 10-07-021, art. III, pt. II; see Nags Head, N.C., Code § 48-87(c). The third amendment adds similar building restrictions to another section of the Town's Code. See Nags Head, N.C., Ordinance No. 10-07-021, art. III, pt. III; Nags Head, N.C., Code § 48-123. The fourth amendment bans the issuance of building permits for any structure subject to a Nuisance Declaration. Nags Head, N.C., Ordinance No. 10-07-021, art. III, pt. I;[2] see Nags Head, N.C., Code § 16-33(c).

---

[1] Ordinance 10-07-021 is available at http://216.92.112.133/departments/administration/Board-ordinances/index-ordinances.htm (last visited July 16, 2012) (available under the heading "Public trust land permitting").

[2] The ordinance's articles appear to be misnumbered. This should be Article IV, Part I.

2

On October 6, 2010, three months after the Town adopted Ordinance 10-07-021, plaintiffs applied for a building permit to repair one of the Cottages. [D.E. 34-12]; see Compl. ¶ 78. Plaintiffs' application was "deemed to be incomplete when submitted," and the Town denied plaintiffs' application for a building permit. Compl. ¶¶ 78–79.

On December 3, 2010, plaintiffs filed in Dare County Superior Court an Application and Order Extending Time to File Complaint, allowing plaintiffs to file their complaint on December 22, 2010. See [D.E. 1-2]. On December 21, 2010, plaintiffs filed suit in Dare County Superior Court, challenging Ordinance 10-07-021 [D.E. 1-4]. The complaint contains ten claims:

(1) Declaratory judgment that N.C. Gen. Stat. § 143-138 preempts Ordinance 10-07-021. Id. ¶¶ 87–102.

(2) Declaratory judgment that the Town's enactment of Ordinance 10-07-021 exceeded the Town's zoning authority. Id. ¶¶ 103–15.

(3) Declaratory judgment that the Town's enactment of Ordinance 10-07-021 exceeded the Town's nuisance authority. Id. ¶¶ 116–33.

(4) Declaratory judgment that Ordinance 10-07-021 unlawfully delegates the Town's zoning power to the town manager. Id. ¶¶ 134–45.

(5) Declaratory judgment that the Cottages are not subject to Ordinance 10-07-021. Id. ¶¶ 146–55.

(6) Declaratory judgment that the Town's enactment of Ordinance 10-07-021 violated plaintiffs' vested rights to the application of the Town's unamended ordinances. Id. ¶¶ 156–76.

(7) Declaratory judgment that the Town's enactment and enforcement of Ordinance 10-07-021 deprived plaintiffs of their substantive due process rights under the United States and North Carolina Constitutions. Id. ¶¶ 177–80.

(8) Declaratory judgment that the Town's enactment and enforcement of Ordinance 10-07-021 deprived plaintiffs of their procedural due process rights under the United States and North Carolina Constitutions. Id. ¶¶ 181–84.

(9) The Town, by enacting and enforcing Ordinance 10-07-021, acted under color of state law to deprive plaintiffs of their rights secured by the Fifth and Fourteenth

3

Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983. Id. ¶¶ 185–89.

(10) The Town's enactment and enforcement of Ordinance 10-07-021 was a regulatory taking under the United States and North Carolina Constitutions. Id. ¶¶ 190–202.

On January 26, 2011, the Town removed the action to this court based on federal question jurisdiction [D.E. 1]. On February 2, 2011, the Town filed an answer and denied liability. Answer [D.E. 7].

On January 18, 2012, plaintiffs moved for summary judgment [D.E. 30–31]. On the same day, the Town filed a motion for judgment on the pleadings and a motion to dismiss for lack of subject-matter jurisdiction [D.E. 32–34]. On February 13, 2012, plaintiffs responded in opposition to the Town's motions [D.E. 35]. On February 14, 2012, the Town responded in opposition to plaintiffs' motion [D.E. 36–38]. On March 1, 2012, plaintiffs replied to the Town's opposition to the motion for summary judgment [D.E. 40]. On the same day, the Town replied to plaintiffs' opposition to the Town's motions [D.E. 41].

II.

When considering a motion to dismiss for lack of subject-matter jurisdiction, "the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005). The court also accepts as true all material factual allegations in the complaint. See Warth v. Seldin, 422 U.S. 490, 501 (1975). The court, however, need not accept the complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–79 (2009). Similarly, the court is not bound to "accept as true

4

unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted); see Iqbal, 556 U.S. at 677–79.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotations omitted); Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006). Thus, an agency's mere threat of wrongdoing is not sufficient to warrant judicial intervention unless the threat is "real and immediate . . . ." O'Shea v. Littleton, 414 U.S. 488, 494 (1974). Rather, a party must show that the agency's action "has been formalized and its effects felt in a concrete way . . . ." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200 (1983) (quotation omitted). In the context of building and zoning permits, a party must obtain a final administrative decision before challenging an ordinance. See Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 406–07 (4th Cir. 2007); Washlefske v. Winston, 234 F.3d 179, 182 (4th Cir. 2000). Ripeness is particularly important in land-use permit disputes because, until the local agency has reached a definitive decision on a permit application, federal courts risk prematurely intervening in a delicate and important local matter. See Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1291 (3d Cir. 1993) (collecting cases).

Plaintiffs allege that "[s]ubsequent to the adoption of [Ordinance 10-07-021]," they applied

5

for a building permit so that they could repair one of the Cottages. Compl. ¶ 78. Plaintiffs also allege that the application was "deemed to be incomplete when submitted," and that the Town denied plaintiffs' application. Id. ¶¶ 78–79; see Answer ¶ 79. The Town, however, did not deny plaintiffs a building permit based on Ordinance 10-07-021. Rather, the Town denied plaintiffs a permit because their application was incomplete. See Compl. ¶¶ 78–79.[3] Moreover, the evidence supports this conclusion concerning the allegations in the complaint.[4] Simply put, plaintiffs cannot challenge Ordinance 10-07-021 based solely on the Town's threatened or hypothetical denial of a permit. See, e.g., Texas, 523 U.S. at 300; O'Shea, 414 U.S. at 494, 496. Because the Town has yet to issue a final decision regarding how Ordinance 10-07-021 applies to plaintiffs, plaintiffs' challenges to the ordinance are not ripe. See, e.g., Holliday Amusement Co., 493 F.3d at 406–07; Washlefske, 234 F.3d at 182. Accordingly, the court grants the Town's motion to dismiss for lack of subject-matter jurisdiction.

---

[3] Plaintiffs allege that "the Town denied Plaintiffs' application for a building permit . . . on [the] grounds that [Ordinance 10-07-021] prohibits the issuance of a building permit for any work to be done on the Property for any purpose other than to remove or demolish the Cottage . . . ." Compl. ¶ 78. The court, however, rejects such an unwarranted inference, see Giarratano, 521 F.3d at 302, especially in light of plaintiffs' admission that their application was "deemed to be incomplete when submitted . . . ." Compl. ¶ 79.

[4] See, e.g., [D.E. 34-12] (plaintiffs' incomplete permit application); Ogburn Aff. [D.E. 33-2] ¶ 8 ("Other than the incomplete application for a building permit . . . presented by and returned to Wanda Anderson in early October of 2010, none of the Plaintiffs or their agents . . . presented, submitted or filed an application for a building or zoning permit for repairing any of the Cottages . . . ."); id. ¶ 10 ("The Town's staff has not issued a written determination that [Ordinance 10-07-021] applied to the Properties, the Cottages or the Plaintiffs."); id. ¶ 11 ("Plaintiffs have not been denied a building or zoning permit by the Town pursuant to the provisions of [Ordinance 10-07-021]."); Ballance Dep. [D.E. 34-6] 3 (Dep. 36–37) (noting that plaintiffs' application lacked "an estimated cost" for the project); cf. Sansotta Dep. [D.E. 34-1] 4 (Dep. 144) (noting that plaintiffs never received "a written decision from the Town responding to [the] application"); Anderson Dep. [D.E. 34-2] 4–7 (Dep. 44–56) (describing that the Town informed plaintiffs only that "[the Town] can't accept this [application]" and handed the application back along with copies of changes to the "rules and regs").

6

Alternatively, even if plaintiffs' claims are ripe, the claims have become moot since the lawsuit started. A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969); see Townes v. Jarvis, 577 F.3d 543, 546 (4th Cir. 2009); Kennedy v. Block, 784 F.2d 1220, 1222 (4th Cir. 1986). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence . . . ." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted); see Townes, 577 F.3d at 546; Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006). Otherwise, a court's ruling would be "'an opinion advising what the law would be upon a hypothetical state of facts.'" White v. Nat'l Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)).

Since plaintiffs filed their complaint, a beach nourishment project has restored the beach sand in front of the Cottages. See, e.g., Ogburn Aff. ¶¶ 4–5. As a result, on September 14, 2011, the Town partially withdrew the Nuisance Declaration. See [D.E. 34-11] (letter notifying plaintiffs of the partial withdrawal). Specifically, the Town notified plaintiffs that the Cottages "no longer constitute[d] a violation of Town Code Sec. 16-31(6)(c)," but that the Cottages "continue[d] to constitute a nuisance under Town Code Sec. [16-31(6)(b)]" because of structural damage. Id. 1. The Town explained that even though the Cottages were "clearly still" in the public trust area, the Nuisance Declaration had been partially lifted because the Cottages no longer impeded "use of and access to the ocean beach." Id. The Town invited plaintiffs to apply for permits to repair the Cottages. Id. 1–2.

The renourishment project and the Town's withdrawal of the Nuisance Declaration foreclose the possibility that plaintiffs will be subject to the same situation under Ordinance 10-07-021, and prevent the court's adjudication of plaintiffs' claims from redressing plaintiffs' alleged injuries. See

7

Townes, 577 F.3d at 547. Thus, plaintiffs lack a real interest in challenging Ordinance 10-07-021. See Kennedy, 784 F.2d at 1222. The court's adjudication of plaintiffs' claims would be an advisory opinion regarding a now hypothetical dispute. See Nat'l Union Fire Ins. Co., 913 F.2d at 167.

Furthermore, to the extent the Town's withdrawal of the Nuisance Declaration is a voluntary cessation, it does not negate the mootness of plaintiffs' claims. A defendant's voluntary cessation may still moot a claim when "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur . . . and . . . (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Jones v. Poindexter, 903 F.2d 1006, 1009 (4th Cir. 1990) (quotation omitted) (first and second alterations in original). For there to be a reasonable expectation that the challenged conduct will recur, the recurrence must appear to be "probable," not "merely possible . . . ." Brooks, 462 F.3d at 348; see Reyes v. City of Lynchburg, 300 F.3d 449, 453 (4th Cir. 2002); Am. Legion Post 7 v. City of Durham, 239 F.3d 601, 606 (4th Cir. 2001).

Simply because it is possible for a defendant to resume its challenged conduct does not create a reasonable expectation that the Town will. See Am. Legion, 239 F.3d at 605–06 (finding moot a challenge to a repealed ordinance when, even though the government was "free to re-enact th[e] ordinance," there was no indication that it would); cf. Brooks, 462 F.3d at 348 ("Only if reenactment is not merely possible but appears probable may we find the harm to be 'capable of repetition, yet evading review' and hold that the case is not moot." (citations omitted)). In fact, courts often give considerable credence to a government's indication that it will not repeat the challenged conduct. See, e.g., Chi. United Indus., Ltd. v. City of Chi., 445 F.3d 940, 947 (7th Cir. 2006) ("'[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur . . . .'" (quoting Troiano v. Supervisor of Elections in Palm

8

Beach Cnty., 382 F.3d 1276, 1283 (11th Cir. 2004)) (first alteration in original) (emphasis removed)); Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." (quotation omitted)); see also 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533.7 (3d ed. 2008) (collecting cases).

Moreover, when a defendant abandons conduct due to a change in circumstances—as opposed to ceasing conduct in response to litigation, see, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 658 (4th Cir. 1967) (en banc)—there is generally not a reasonable expectation of recurrence. See, e.g., Cnty. of L.A. v. Davis, 440 U.S. 625, 631–32 (1979) (finding no reasonable expectation of repeated conduct when circumstances prompting the challenged conduct were "temporary," "unique," and "unlikely to recur"); St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 625–28 (7th Cir. 2007) (finding moot a challenge to a city's acquisition of property for an airport when the city ceased acquisition of the property because the FAA had since altered the airport's expected layout); Walker v. S.F. Unified Sch. Dist., 46 F.3d 1449, 1463 (9th Cir. 1995) (finding moot a challenge to a school district's practice of leasing property from religious organizations when the school district had since invested in a mobile classroom as an alternative solution); see also Nome Eskimo Cmty. v. Babbitt, 67 F.3d 813, 814–16 (9th Cir. 1995) (finding moot a challenge to the government's sale of dredging leases because the government had failed to sell any leases and the only indication of a future sale in the "near or distant future" was a single statement by the Secretary of the Interior that the government was considering selling leases seven years from then).

The Town withdrew the Nuisance Declaration because of a momentous change in circumstances—the renourishment of the Nags Head beach front—not the pending lawsuit. In addition, the Town has invited plaintiffs to seek permits to repair the Cottages, which implies that the Town will not seek to enforce Ordinance 10-07-021. See [D.E. 34-11] 1–2. Accordingly, although it is possible that the Town may seek to enforce Ordinance 10-07-021 against plaintiffs, there seems to be no "reasonable expectation" that the Town actually will. See Am. Legion, 239 F.3d at 605–06. Furthermore, the renourishment project and the Town's withdrawal of the Nuisance Declaration appear to "have completely and irrevocably eradicated the effects of the alleged violation." Poindexter, 903 F.2d at 1009. Accordingly, plaintiffs' claims are moot and the court lacks subject-matter jurisdiction.

Finally, and alternatively, even if the claims are ripe and not moot, the court would decline to exercise jurisdiction over plaintiffs' claims. This case essentially involves the same land-use dispute presented in Town of Nags Head v. Toloczko, No. 2:11-CV-1-D, 2012 WL 1059850 (E.D.N.C. Mar. 28, 2012) (unpublished). In fact, the defendants in Toloczko asserted six counterclaims that are identical to plaintiffs' first six claims. Compare Compl. ¶¶ 87–176, with Toloczko, 2012 WL 1059850, at *2. Furthermore, the facts in this case regarding the Town's land-use ordinances are materially indistinguishable from those in Toloczko. Therefore, the legal analyses set forth in Toloczko—regarding the imprudence of a federal court adjudicating novel and important issues of North Carolina land-use law—apply with equal force to this case. For the reasons stated in Toloczko, if the court does have subject-matter jurisdiction, it would decline to grant declaratory relief to plaintiffs and abstain from exercising jurisdiction over plaintiffs' other claims.

III.

The court GRANTS the Town's motion to dismiss for lack of subject-matter jurisdiction [D.E. 32], and DENIES as moot plaintiffs' motion for summary judgment [D.E. 30] and the Town's motion for judgment on the pleadings [D.E. 32].

SO ORDERED. This 17 day of July 2012.

JAMES C. DEVER III
Chief United States District Judge